UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ANTHONY DAVIS,

                        Petitioner,

                                            **OPINION & ORDER**
                                            CV-05-3621
                                            (SJF)(ETB)

-against-


DALE ARTUS, SUPERINTENDENT,

                        Respondent..
----------------------------------------------------------X
FEUERSTEIN, J.

On September 19, 2002, a judgment of conviction was entered in the County Court of the State of New York, Nassau County (Honorof, J.), upon a jury verdict finding petitioner Anthony Davis (petitioner) guilty of robbery in the first degree (N.Y. Penal Law §160.15[3]), robbery in the second degree (N.Y. Penal Law §160.10[2][a]), criminal possession of a weapon in the third degree (N.Y. Penal Law §265.02[1]), two counts of assault in the second degree (N.Y. Penal Law §120.05[2], [6]) and grand larceny in the fourth degree (N.Y. Penal Law §155.30 [5]), and imposition of sentence. Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth herein, the petition is denied and the proceeding is dismissed.

I.     BACKGROUND

     A.     Factual Background

The following facts were taken from the trial transcript (T.) and sentencing minutes (S.):

1

On January 15, 2001, at approximately 7:45 p.m., petitioner attacked Juan Jose Cuadra (Cuadra) with a stick or a bat as Cuadra stood in the doorway of the Nazarino Deli, located at 498 Hempstead Turnpike in Elmont, Nassau County. (T. 135-140). Cuadra recognized petitioner and identified him by his street name "Peanut." (T. 140-144). According to Cuadra, petitioner hit him repeatedly in the mouth and about the head, causing him to fall to the ground, then kicked him repeatedly and took his wallet and a gold chain with a gold "J" on it. (T. 145-147). Cuadra testified that petitioner ran off when a person, later identified as Jesus Nunez (Nunez), who worked as a clerk in the deli, emerged from the deli and told petitioner to leave Cuadra alone. (T. 151).

Nunez testified that he did not know Cuadra, but he knew "Peanut" and saw him often in the deli. (T. 212-215). Nunez identified Cuadra from a photograph shown to him by the Assistant District Attorney as the man he had seen thrown on the sidewalk and being hit on the head by "Peanut." (T. 216). According to Nunez, he interrupted the attack, surprising "Peanut," who then grabbed something from Cuadra's neck and left. (T. 225).

When Police Officer Palermo (Palermo) arrived at the deli at approximately 8:09 or 8:10 p.m., he observed an ambulance in front of the deli, in the back of which was a paramedic helping Cuadra, whose head was bandaged and bleeding. (T. p. 245). Palermo took Cuadra's statement, then drove him to petitioner's address on Roquette Avenue. (T. 247-248). Petitioner was arrested following a positive identification by Cuadra. (T. 248).

Police Officer Kenneth Magnuson searched petitioner's apartment, but found no evidence of the crime. (T. 267, 282).

B.  Procedural Background

On September 19, 2002, a judgment of conviction was entered in the County Court, Nassau County (Honorof, J.), upon a jury verdict finding petitioner guilty of robbery in the first degree, robbery in the second degree, criminal possession of a weapon in the third degree, two counts of assault in the second degree, and grand larceny in the fourth degree, and imposition of sentence.

At the sentencing hearing, the trial court referred to this matter as a "textbook case of human tragedy," (S. 13), referring to petitioner's addiction to a controlled substance and abandonment at birth by his mother and to the severe head injuries petitioner sustained as a result of a car accident that occurred when he was five years old, which resulted in cognitive and physical difficulties. (S. 6-7). Citing petitioner's special needs and the victim's injuries, the trial court declined to impose either the maximum sentence of twenty-five years recommended by the People or the ten year sentence requested by petitioner's trial counsel. (S. 13-14). Instead, the trial court sentenced petitioner to a determinate term of imprisonment of fifteen (15) years with five (5) years post-release supervision. (S. 15).

Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department on the grounds, *inter alia*,: (1) that the trial court erred in refusing to provide a prompt curative instruction after a prosecution witness gave damaging and unsolicited testimony; (2) that the trial court committed reversible error in failing to record a sidebar conference; (3) that the prosecutor improperly used peremptory challenges to strike a black prospective juror in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); and (4) that the sentence imposed was unduly harsh. On February 23,

2004, the Appellate Division affirmed the judgment of conviction, finding, *inter alia*, (1) that petitioner's Batson claim was unpreserved and, in any event, was without merit; (2) that the absence of a stenographic record did not require reversal of petitioner's conviction in this case because petitioner failed to demonstrate that he was prejudiced by the absence of the minutes from the bench conference; (3) that the sentence imposed was not excessive; and (4) that the petitioner's remaining contentions were without merit. People v. Davis, 4 A.D.3d 533, 771 N.Y.S.2d 712 (N.Y. App. Div. 2004). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on May 14, 2004. People v. Davis, 2 N.Y.3d 798, 781 N.Y.S.2d 297, 814 N.E.2d 469 (N.Y. 2004).

On July 27, 2005, petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging (1) that the trial court erred in failing to provide cautionary instructions after a prosecution witness provided damaging and unsolicited testimony; (2) that the trial court erred in failing to record a sidebar conference; (3) that the prosecutor improperly used a peremptory challenge to exclude an Afro-American juror; and (4) that the sentence imposed was harsh and excessive.

II. DISCUSSION

A. The AEDPA

The Anti Terrorism and Effective Death Penalty Act (AEDPA) 28 U.S.C. § 2254 governs applications of incarcerated state court defendants seeking federal habeas corpus relief.

B.  Exhaustion and Procedural Bar

The AEDPA requires that prior to bringing a petition for habeas corpus relief in federal court, a petitioner "exhaust the remedies available in state court or demonstrate that 'there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the [petitioner].'" Fama v. Commissioner of Correctional Services, 235 F.3d 804, 808 (2d Cir.2000)(citation omitted, insertion in original). The exhaustion requirement mandates that the petitioner "fairly present" both the factual and legal premises of his federal claim to the highest state court. Baldwin v. Reese, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed. 2d 64 (2004); see also Jones v. Keane, 329 F.3d 290, 294-295 (2d Cir. 2003).

With the exception of petitioner's excessive sentence claim as set forth in Part C(3), infra, petitioner fairly presented his claims to the highest state court and, thus, those claims are properly exhausted. However, "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Harris v. Reed, 489 U.S. 255, 264, n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). A federal court may not review a claim that were denied in state court pursuant to an independent and adequate state procedural rule unless the petitioner shows (1) good cause for the default and prejudice resulting from non-review of the claim, or (2) that the failure by this court to consider the federal claims will result in a fundamental miscarriage of justice, specifically the conviction of a person who is actually innocent. Harris, 489 U.S. at 262, 109 S.Ct. 1038; Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994). Since petitioner's Batson

claim was denied by the Appellate Division on an independent and adequate state law procedural ground, i.e. it was unpreserved for appellate review, and petitioner has not established good cause for his failure to properly raise that issue in state court, prejudice to him resulting from a failure to review this claim or actual innocence, petitioner is foreclosed from raising his <u>Batson</u> claim on federal habeas review.

C.   Standard of Review

Under the AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim

> "...(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural resolution of a federal claim." <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 313 (2d Cir. 2001) (quoting <u>Aycox v. Lytle</u>, 196 F. 3d 1174, 1178 [10th Cir. 1999]). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" standard, "a federal habeas court may not issue the writ simply because [it] concludes in its

independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001). Under the AEDPA, determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

1.  Failure to Provide Prompt Curative Instruction

The unsolicited and allegedly prejudicial testimony by Cuadra which is challenged by petitioner is recorded on page 158 of the trial transcript as follows:

[Prosecutor]: Please tell the jury where you went [after the attack].

[Cuadra]: Well, the police took me to his house. I described everything, and they told me that they had arrested him for two other times.

Defense counsel's objection to Cuadra's testimony was sustained by the trial court, but his application for a mistrial was denied. (T. 158). Thereafter, the prosecutor requested a bench conference, which was not recorded.

During a subsequent recorded bench conference that afternoon, defense counsel summarized what had occurred during the unrecorded bench conference earlier that day, stating that the trial court and prosecutor had indicated that they had either not heard the challenged testimony at all or had not heard it completely. (T. 180). During the recorded bench conference, defense counsel renewed his application for a mistrial. (T. 180-181). The trial court reserved decision on defense counsel's application and inquired as to whether defense counsel wanted a

curative instruction to be given to the jury, telling them to disregard the testimony that petitioner had been arrested twice previously, while Cuadra was still on the stand, since such an instruction might compound any prejudice from the testimony. (T. 181-182). When the parties and the trial court could not agree on an appropriate alternative curative instruction, (T. 182-184), the court deferred giving a curative instruction until the parties had time to consider the issue further. (T. 184). Defense counsel then moved on to other matters with no further comment on the issue of a curative instruction. (T. 184).

The issue of an appropriate curative instruction was not revisited until the charge conference, at which time the trial court advised defense counsel that his prior application for a mistrial was denied. (T. 310). The trial court further requested that counsel for both parties provide requests for an appropriate curative instruction on the next court date for the court to incorporate into the jury charge. (T. 310).

When court reconvened, the trial court stated that since neither party, and particularly defense counsel, had suggested any curative instruction, the parties had waived a curative instruction. (T. 312-313). Defense counsel responded that any curative instruction at that point would be too late and would draw too much attention to the challenged testimony and that, therefore, he was satisfied with the court's general charge. (T. 314-315). During its jury charge, the court gave a general charge regarding objections, (T. 375-376), to which defense counsel did not object. (T. 405).

In light of the trial court's efforts to provide an appropriate curative instruction to the jury both while the witness was still on the stand and during its jury charge, defense counsel's failure to submit any language for the court to include in any curative instruction despite the court's

8

repeated requests therefor, defense counsel's explicit rejection of any curative instruction during the jury charge, and defense counsel's acquiescence in the court's general charge to the jury regarding objections, defense counsel waived any right petitioner may have had to a curative instruction with respect to the challenged testimony. See U.S. v. Ochoa-Vasquez, 428 F.3d 1015, 1035 (11th Cir. 2005) (holding that the defendant waived the issue of use of a cautionary instruction where he argued against its use or, in the alternative, claimed that the court should fashion an agreeable jury instruction, but failed to request such an instruction in the final jury charge), petition for cert. filed, 74 U.S.L.W. 3687 (U.S. May 26, 2006)(No. 05-1524); U.S. v. Rivera-Santiago, 872 F.2d 1073, 1084 (1st Cir. 1989) (holding that the failure to object to the final charge to the jury amounted to a waiver of the request for a cautionary instruction); see also Dunnigan v. Keane, 137 F.3d 117, 127 (2d Cir. 1998) (concluding that defense counsel's election not to request a limiting an instruction either when the witness testified or when the court gave its final charge to the jury, notwithstanding that the trial court indicated that it would give one, was a conscious election and, therefore, the failure to give an appropriate limiting instruction did not warrant habeas relief).

In any event, petitioner's claim fails on the merits. "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). An erroneous evidentiary ruling does not amount to a constitutional violation unless the evidence in question was so extremely unfair that its admission violated fundamental conceptions of justice. Dunnigan, 137 F.3d at 125 (citing Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 [1990]). In order to constitute a denial of due process, the prejudicial evidence erroneously admitted must have been "sufficiently material to provide

the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Id. (internal quotations and citations omitted). In assessing the materiality of the erroneously admitted evidence, the evidence must be viewed in light of the entire record before the jury. Id.

Moreover, federal habeas review on the ground of error in a state court's instructions to the jury on matters of state law is limited to situations in which the challenged instruction misstated state law and the error violated a right guaranteed to the petitioner by federal law. See Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985). The only question for a federal court on habeas review of a jury charge is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 71-72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)(citations omitted).

The mention of petitioner's prior arrests was not responsive to the prosecutor's question, was only briefly mentioned and the objection to the testimony was sustained. In addition, petitioner does not allege that the court's jury charge misstated the law and it cannot be said that the brief unsolicited mention of petitioner's prior arrests or the trial court's failure to give a prompt curative instruction so infected the entire trial or was so extremely unfair that it rendered the resulting conviction violative of petitioner's constitutional rights. Since petitioner has failed to establish that the trial court's failure to give a prompt curative instruction was contrary to, or involved an unreasonable application of, well-settled Supreme Court precedent, his claim is denied on the merits.

2. Off-the-Record Bench Conference

Section 295 of the New York Judiciary Law, which is applicable to criminal proceedings in state court, requires that full stenographic notes be taken of all state court trial proceedings and that "on request of counsel during a jury trial, each and every remark or comment of the judge and every exception taken to any such ruling or decision must be recorded." People v. Harrison, 85 N.Y.2d 794, 796, 628 N.Y.S.2d 939, 652 N.E.2d 638 (N.Y. 1995)(internal quotations and citation omitted). Since the taking of stenographic notes in state court trial proceedings is governed by state law, federal habeas review of petitioner's claim that the trial court erred in failing to record an off-the-record bench conference is unavailable. See generally, Estelle, 502 U.S. at 67, 112 S.Ct. 475 (holding that federal habeas relief does not lief for errors of state law).

In any event, petitioner's claim is without merit. Under both state and federal law, the absence of a stenographic record does not require reversal of a criminal conviction absent evidence of any prejudice to the petitioner by the absence of a stenographic record. See, e.g. Bransford v. Brown, 806 F.2d 83, 86 (6th Cir. 1986)(holding that the absence of certain portions of the trial transcripts is not a per se denial of the petitioner's due process right to a fair appeal absent a showing of prejudice resulting to the petitioner from the missing transcripts); Harrison, 85 N.Y.2d at 796, 628 N.Y.S.2d 939 (holding that reversal is not required if the defendant is not prejudiced by the absence of a stenographic record); see also U.S. v. Weisser, 417 F.3d 336, 342 (2d Cir. 2005)(holding that a petitioner must show specific prejudice to his ability to perfect an appeal before he will be granted habeas relief based on gaps in the record), cert. denied, 126 S.Ct. 505, 163 L.Ed.2d 382 (2005). Defense counsel summarized what occurred during the unrecorded bench conference and petitioner cannot establish that he was prejudiced in his appeal

by the absence of a stenographic record of that conference. Accordingly, the Appellate Division's determination that the absence of a stenographic record did not require reversal of petitioner's conviction in this case because petitioner failed to demonstrate that he was prejudiced by the absence of the minutes from the bench conference was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent and, thus, petitioner's claim is denied on the merits.

3. Sentence

On his appeal to state court, petitioner contended that the sentence imposed was excessive given his "tragic upbringing," was imposed solely because of "simple vengeance," and should be modified pursuant to state law. (Brief for the Defendant/Appellant on appeal to the Appellate Division, Second Judicial Department, p. 15). Petitioner did not argue on the appeal that the sentence imposed violated the Eighth Amendment prohibition against cruel and unusual punishment or that it otherwise violated the "gross disproportionality" principle articulated by the Supreme Court in, *inter alia*, Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)(holding that the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime); Solem v. Helm, 463 U.S. 277, 289-290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)(accord); and Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Since petitioner did not raise the claim that his sentence was excessive in federal constitutional terms in the state court proceedings, this claim is unexhausted. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

In any event, petitioner's contention is without merit. Federal courts reviewing sentences

12

imposed by state courts on habeas review "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." Solem, 463 U.S. at 290, 103 S.Ct. 3001. The "gross disproportionality" principle repeatedly articulated by the Supreme Court is applicable "only in the exceedingly rare and extreme case," Lockyer v. Andrade, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)(internal quotations and citation omitted), and is reserved "for only the extraordinary case." Id. at 77, 123 S.Ct. 1166; see also U.S. v. Snype, 441 F.3d 119, 152 (2d Cir. 2006)(holding that successful challenges to the proportionality of particular sentences have been exceedingly rare); U.S. v. Gonzalez, 922 F.2d 1044, 1053 (2d Cir. 1991)(holding that only in a rare case should a court engage in reviewing disproportionality of sentences because the legislature's fixing of terms for imprisonment is presumptively valid). The Second Circuit has held that "[n]o federal constitutional issue is presented where * * * the sentence is within the range prescribed by state law," White, 969 F.2d at 1383, and that "[t]he Eighth Amendment condemns only punishment that shocks the collective conscience of society." Gonzalez, 922 F.2d at 1053.

Petitioner has not demonstrated that the Appellate Division's finding that "[t]he sentence imposed was not excessive," People v. Davis, 4 A.D.3d 533, 771 N.Y.S.2d 712 (2d Dept. 2004), is contrary to, or involved an unreasonable application of, the "gross disproportionality" principle articulated by the Supreme Court, i.e., that the sentence imposed was constitutionally disproportionate to the crimes for which he was convicted. Moreover, the sentence imposed was within the statutory range prescribed by N.Y. Penal Law §§ 70.00 and 70.25, was less than the

term advocated by the People, and was not grossly disproportionate to the crimes charged. Since this is not one of those extraordinary cases in which the sentence imposed shocks the conscience or otherwise constitutes a constitutional violation, petitioner's claim is denied on the merits.

III.     CONCLUSION

Petitioner's petition for a writ of habeas corpus is denied and the proceeding is dismissed in its entirety. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(a)(2) a certificate of appealability is denied, as petitioner has not made a substantial showing of a denial of a constitutional right. Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. See 28 U.S.C. §2253.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: July 7, 2006
       Central Islip, New York

Copies to:

Anthony Davis, *pro se*
02-A-5652
Clinton Correctional Facility
P.O. Box 2001
Dannemore, NY 12929

Nassau County District Attorney
262 Old Country Road
Mineola, NY 11501

14